**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Derrick Diaz,<br><br>    Plaintiff,<br><br>vs.<br><br>Jo Anne Barnhart, Commissioner of the Social Security<br><br>    Defendant. | No. CIV 05-3602-PHX-MHM<br><br>**ORDER** |

Plaintiff Derrick Diaz ("Plaintiff") seeks judicial review of the Administrative Law Judge's ("ALJ") decision denying his claim for disability insurance benefits and supplemental security income

**I.    Procedural History**

On February 11, 2003, Plaintiff filed applications for disability insurance benefits and supplemental security income payments alleging an onset date of December 12, 2001, because of back pain, knee pain and depression. (Transcript "Tr." 22). The claims were denied initially and upon reconsideration. On December 8, 2004, a hearing was held in front of an ALJ with Plaintiff, Plaintiff's counsel, and vocational expert David A. Janus ("Mr. Janus") present. On January 27, 2005, the ALJ issued her written decision denying Plaintiff's request for benefits finding Plaintiff not disabled within the meaning of the Social Security Act. (Tr.21-32). Plaintiff's request for review of the ALJ's decision was denied by the

Appeals Council on September 9, 2005. (Tr.9-11). Plaintiff then initiated the instant action for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

**II.   Background Facts**

   **A.   Plaintiff's Medical History**

On December 10, 2002, Steven Kassman, M.D. ("Dr. Kassman") performed surgery on Plaintiff's right knee to repair a torn medial meniscus and lateral meniscus. (Tr.137, 200). From August 26, 2002, through September 16, 2003, Plaintiff was seen and treated by Autul Patel, M.D., ("Dr. Patel"). (Tr.275-91). On August 26, 2002, Dr. Patel diagnosed Plaintiff with mechanical lower back pain, status post back injury and lumbar degenerative disc disease. (Tr.275). On October 7, 2002, Dr. Patel diagnosed Plaintiff with thoracolumbar sprain and strain and a rib cage contusion. (Tr.287). Dr. Patel recommended physical therapy and stated that Plaintiff was capable of "modified sedentary work." (Tr.287). On January 14, 2003, Dr. Patel noted that Plaintiff may be a good candidate for epidural injections and noted that Plaintiff was capable of performing sedentary to light activity. (Tr.282-83). On June 19, 2003, an MRI scan suggested a possible re-tear or residual tear of the medial meniscus, along with moderate joint effusion. (Tr.201). On June 30, 2003, Dr. Patel noted chronic low back pain, obesity, poor posture and multi-level degenerative changes of the back. (Tr.278). Dr. Patel recommended the continuation of "conservative management" as well as Plaintiff's injections. (Id).

On August 6, 2003, Plaintiff was examined by Malcolm McPhee, M.D. ("Dr. McPhee"), a consultative examining physician at the request of Arizona Department of Economic Security. (Tr.143). Dr. McPhee diagnosed Plaintiff with chronic low back pain and status after bilateral knee arthroscopic surgeries. (Tr.144). Dr. McPhee stated that based upon his examination, there was no reason Plaintiff could not lift 50 pounds occasionally, 25 pounds frequently, stand or walk for four hours in an eight-hour day and sit for six hours of an eight-hour day. (Tr.144).

On August 20, 2003, Robert Hubek, M.D. ("Dr. Hubek") performed a physical residual functional capacity assessment of Plaintiff finding that the Plaintiff could

1  occasionally lift up to 50 pounds, frequently lift up to 25 pounds, could stand or walk up to
2  four hours in an eight-hour day and could sit for a total of six hours in an eight-hour day.
3  (Tr.149).  Dr. Hubek noted Plaintiff's allegations to be out of proportion to the objective
4  findings and therefore considered Plaintiff only partially credible. (Tr.153).

5       On September 7, 2004, Jacquelyn Paul, M.S., an exercise physiologist recommended
6  that Plaintiff could perform sedentary to light and noted that if sedentary work was pursued
7  the Plaintiff would require breaks every hour from sitting. (Tr.315).

8       On October 2, 2003, Plaintiff was examined by Armando Bencomo, Ph.D, ("Dr.
9  Bencomo") a clinical psychologist. (Tr.156-60).  Dr. Bencomo diagnosed Plaintiff with
10 adjustment disorder with depressed mood, moderate; pain disorder due to medical condition;
11 polysubstance abuse in sustained remission; adult antisocial behavior related to alcohol use,
12 in sustained remission; and hypothyroid, low back pain, knee pain and overweight. (Tr.159).
13 Dr. Bencomo stated that Plaintiff was moderately depressed and would benefit from an
14 antidepressant for his mood and to improve pain tolerance. (Tr.159).  In addition, in assessing
15 Plaintiff's work related activities based upon his mental state, Dr. Bencomo found Plaintiff
16 to be "not limited" "good" or "good to fair" in most categories. (Tr. 160).  However, with
17 respect to Plaintiff's ability to "deal with work stresses" and "behave in an emotionally stable
18 manner," Dr. Bencomo found Plaintiff to be in the "fair" category.  "Fair" is defined as
19 "seriously limited  but not precluded." (Tr.160).

20      On October 3, 2003, a non-examining state agency physician, James Campbell, M.D.,
21 ("Dr. Campbell") reviewed Plaintiff's record. (Tr.161-63).  Dr. Campbell in performing a
22 functional capacity assessment found Plaintiff able to perform substantial gainful activity and
23 found "no significant psychiatric illness."  (Tr.163).  Dr. Campbell further stated that any
24 limitations were somatic in nature. (Id.).

25 **B.     Hearing Testimony**

26      At the hearing on December 8, 2004, Plaintiff and Mr. Janus, the vocational expert
27 testified. (Tr.335-369).  Plaintiff testified that he had two knee surgeries done on each knee,
28 but continued to suffer problems with pain.  (Tr.344).  Plaintiff also testified regarding his

- 3 -

1  struggle with depression. For instance, Plaintiff testified to feeling tired all the time with
2  frequent crying at home. (Tr.348). Plaintiff further testified that although he battled with
3  depression he did not actively seek a lot of treatment, because he was not "raised like that."
4  (Tr.350).

5  At the hearing, Mr. Janus classified Plaintiff's past work experience as an electrician
6  or electrician's helper as semi-skilled work performed at the heavy exertional level. (Tr.358).
7  The ALJ posed several hypothetical questions to Mr. Janus. For instance, the ALJ asked Mr.
8  Janus that assuming a person with the same background and residual functional capacity
9  assessment to that set out by the state physician, Dr. Hubek, whether Plaintiff could perform
10 any other work. (Tr.358-59). Mr. Janus responded that Plaintiff could perform other work
11 such as a night watchman, unarmed guard or parking lot attendant. (Tr.359). In response to
12 the ALJ's hypothetical of whether Plaintiff could perform work based upon limitations of
13 occasionally lifting twenty pounds and occasionally lift up to ten, could stand and walk less
14 than two hours and sit up to six hours in an eight-hour day and possessed a limitation with
15 respect to reaching and handling with unknown specificity; Mr. Janus concluded that it
16 would depend on the severity of the reaching and handling limitation. (Tr.360). Mr. Janus
17 also concluded that Plaintiff could perform other sedentary work based upon the restrictions
18 set forth by Ms. Paul, the exercise physiologist. (Tr.361).

19 In response to the hypothetical question posed by Plaintiff's attorney regarding the
20 limitations noted by Dr. Bencomo as to Plaintiff's "fair" ability to "deal with work stresses"
21 and "behave in an emotionally stable manner," the vocational expert stated sustained work
22 would be precluded if an individual could not handle such matters consistently. (Tr.365).
23 Moreover, Mr. Janus agreed with Plaintiff's counsel that these mental limitations combined
24 with the limitations posed by the ALJ's hypothetical would "more clearly eliminate the ability
25 to work on a sustained basis." (Tr. 366).

26 **C.    ALJ's Conclusion**

27 In the January 27, 2005, decision the ALJ discussed her findings rejecting Plaintiff's
28 claim for disability. The ALJ found Plaintiff's impairments of "bilateral knee degenerative

- 4 -

1  joint disease, degenerative disc disease of the lumbar spine, mild with mild central canal
2  stenosis and sleep anemia, status post surgical treatment" to be severe within the meaning of
3  the Regulations. (Tr.22-23). The ALJ concluded that none of the severe impairments met or
4  equaled the criteria supporting a finding of disability pursuant to Appendix 1, Subpart P,
5  Regulation No. 4. The ALJ found that Plaintiff's asserted mental impairment not to be severe
6  within the meaning of the Regulations. (Tr.25). The ALJ found, in part, that "[t]here is no
7  evidence of more than mild difficulties in concentration, persistence and pace and no
8  evidence of episodes of decompensation of extended duration." (Id.). The ALJ also found
9  Plaintiff's allegations regarding the severity of his physical limitations not totally credible.
10 (Tr.26). The ALJ determined that Plaintiff possessed the residual functional capacity to stand
11 or walk for four hours, sit for about six hours in an eight-hour day; carry 50 pounds
12 occasionally, and lift 25 pounds frequently. (Tr.31). Lastly, the ALJ, based upon these
13 findings and the testimony of Mr. Janus, concluded that Plaintiff retained the ability to
14 perform other work such as an unarmed security guard, parking lot attendant, messenger,
15 assembler and cashier. (Tr.30).

16 **III.    Standard of Review**

17      This Court must affirm the ALJ's findings if they are supported by substantial
18 evidence and free from reversible legal error. Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir.
19 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence
20 as a reasonable mind might accept as adequate to support a conclusion." Richardson v.
21 Perales, 402 U.S. 389, 401 (1971); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990).

22      In determining whether substantial evidence supports a decision, the Court considers
23 the record as a whole. Richardson, 402 U.S. at 401; Tylitzki v. Shalala, 999 F.2d 1411, 1413
24 (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court
25 cannot substitute its own determination. Young v. Sullivan, 911 F.2d 180, 184 (9th Cir.
26 1990). Where evidence is inconclusive, "questions of credibility and resolution of conflicts
27 in the testimony are functions solely of the [Commissioner]." Sample v. Schweiker, 694 F.2d
28 639, 642 (9th Cir. 1982). Therefore, if on the whole record before the Court, substantial

evidence supports the Commissioner's decisions, this Court must affirm. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989); 42 U.S.C. § 405(g).

An ALJ determines an applicant's eligibility for disability benefits through the following five stages:

    (1)    determine whether the applicant is engaged in "substantial gainful activity;"

    (2)    determine whether the applicant has a "medically severe impairment or combination of impairments;"

    (3)    determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

    (4)    if the applicant's impairment does not equal one of the "listed impairments," determine whether the applicant is capable of performing his or her past relevant work;

    (5)    if the applicant is not capable of performing his or her past relevant work, determine whether the applicant "is able to perform other work in the national economy in view of his [or her] age, education, and work experience."

Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987) (citing 20 C.F.R. §§ 404.1520(b)-(f)). See 20 C.F.R. § 416.920. At the fifth stage, the burden of proof shifts to the Commissioner. Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

**IV.**    **Discussion**

Plaintiff raises the following issues on appeal: (1) whether the ALJ erred in finding Plaintiff's mental impairments not "severe" within the meaning of the regulations; and, in the alternative, whether the ALJ erred by denying Plaintiff's request for an updated consultative examination to assess Plaintiff's mental impairments; (2) whether the ALJ erred in rejecting the opinion of the agency's examining psychologist, Dr. Bencomo; and (3) whether the ALJ erred in discounting the Plaintiff's credibility.

    **A.**    **ALJ's Finding of Plaintiff's Mental Impairment to be Not Severe**

Plaintiff contends that the ALJ erred in finding Plaintiff's mental impairments to be not severe within the meaning of the Regulations. In support of this argument, Plaintiff relies upon the results of the psychological examination performed by Dr. Bencomo. (Tr.156-60).

- 6 -

Most notably, as referenced above, Dr. Bencomo found Plaintiff to possess only a "fair" ability to "deal with work stresses" and "behave in an emotionally stable manner." (Tr.160). "Fair" is defined as "seriously limited but not precluded." (Id.). Moreover, Plaintiff points out that when these limitations were posed to the vocational expert regarding Plaintiff's ability to work, the vocational expert agreed with Plaintiff's counsel that if the Plaintiff could not handle such issues, the Plaintiff would not be able to work on a sustained basis. (Tr.365). In response to the Plaintiff's argument, the Defendant asserts that the ALJ's decision on this issue is supported by the requisite substantial evidence. The Defendant notes that "fair" does not necessarily mean that work is precluded. (Tr.160). In addition, Defendant argues that Dr. Bencomo's examination results reveal no significant mental impairment. Defendant also notes the findings of Dr. Campbell, the consultative non-examining physician, that Plaintiff possessed "no significant psychiatric illness" and that Plaintiff's disability, if any, was somatic in nature. (Tr.163).

In reviewing the record on this issue, the Court finds that the ALJ's decision classifying Plaintiff's mental impairment as not severe within the meaning of the Regulations to be unsupported by substantial evidence. As a general matter, 20 CFR § 404.1520(c) defines a severe impairment as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." In addition, SSR 85-28 provides guidance stating in pertinent part:

> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basis work activities, the sequential evaluation should not end with the not severe evaluation step. Rather, it should be continued.[1]

---

[1] Social Security rulings constitute the Social Security Administrator's interpretations of the statute it administers and its own regulations. The rulings are interpretative and do not provide the force of law, but courts will defer to them unless they are plainly erroneous or inconsistent with the Social Security Act or regulations. Chavez v. Department of Health and Human Resources, 103 F.3d 849, 851 (9th Cir. 1996) (citations omitted).

1   In this case, the Court finds that based upon the medical record, it is unclear, at the very
2   least, the extent of the impact of the Plaintiff's mental impairment, thus supporting a severe
3   determination within the meaning of the Regulations. The ALJ's findings as to Plaintiff's
4   mental impairment do not fully consider Dr. Bencomo's stated limitations regarding
5   Plaintiff's ability to "deal with work stresses" and to "behave in an emotionally stable
6   manner." (Tr.160). Rather, in finding the Plaintiff's mental impairment to be not severe the
7   ALJ relied primarily on selective results from Dr. Bencomo's examination, such as ratings
8   of "good" regarding Plaintiff's ability to relate to co-workers, deal with the public, interact
9   with supervisors and to relate predictably in social situations. (Tr.25; 160). The ALJ did not
10  evaluate Plaintiff's "fair" rating suggesting that Plaintiff was seriously limited in "deal[ing]
11  with work stresses" and "behav[ing] in an emotionally stable manner" (Id.).[2] The
12  significance of this omission is clearly bolstered by the testimony of the vocational expert,
13  which reveals that the Plaintiff would be precluded from work if Plaintiff was not able to
14  handle such issues consistently. (Tr.365). Thus, the Court finds that the ALJ's decision
15  classifying Plaintiff's mental impairment as not severe to be unsupported by substantial
16  evidence.

17       The Court's above finding as to severity of Plaintiff's mental impairment also impacts
18  Plaintiff's second argument in support of error; specifically, that the ALJ allegedly failed to
19  properly reject the significant limitations cited by Dr. Bencomo of Plaintiff's ability to "deal
20  with work stresses" or "behave in an emotionally stable manner." (Tr.160). Plaintiff notes
21  that the ALJ failed to address these findings in determining Plaintiff's mental impairment to
22  be not severe, and argues that this omission is inconsistent with the ALJ's obligation to at
23  least provide specific and legitimate reasons supported by substantial evidence in the record
24  rejecting these findings. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); see also
25  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (stating that "opinion of nonexamining

---

[2]Notably, although the ALJ cited Dr. Bencomo's "fair" limitation in the decision, the ALJ did not mention the restrictive definition accompanying such a finding; that is "seriously limited but not precluded." (Tr.25; 160).

- 8 -

1 physician cannot by itself constitute substantial evidence that justifies rejection of the opinion of ... an examining physician."). In opposition, the Defendant contends that the ALJ did not improperly reject the findings of Dr. Bencomo, but rather that Dr. Bencomo's findings actually support the ALJ's determination regarding Plaintiff's non-disabled status. For instance, Defendant notes that Dr. Bencomo's examination produced a diagnosis that Plaintiff suffered from adjustment disorder with depressed mood as moderate. (Tr.159). In addition, Dr. Bencomo stated that Plaintiff was "moderately depressed and would benefit from an antidepressant for his mood." (Id.). As further support, Defendant cites the findings of Dr. Campbell stating that Plaintiff did not suffer from any significant psychiatric illness. (Tr.163).

As stated above, the Court finds that the ALJ's decision finding Plaintiff's mental impairment to be not severe is unsupported by the medical record. In addition, while the Defendant contends that Dr. Bencomo's findings support the ALJ's determination, it is clear that the ALJ failed to evaluate Dr. Bencomo's significant limitations implicating Plaintiff's ability to engage in work. In light of this determination, the Court cannot find that the ALJ properly rejected Dr. Bencomo's findings regarding Plaintiff's ability to "deal with work stresses" or "behave in an emotionally stable manner" or that Dr. Bencomo's findings overall support the ALJ's determination in light of her failure to discuss these limitations. As such, the Court finds that the ALJ did not properly reject Dr. Bencomo's cited limitations.

### B.     Rejection of Plaintiff's Symptom Testimony

Lastly, Plaintiff contends that the ALJ erred in discounting Plaintiff's credibility as to the severity of his symptoms. Plaintiff asserts that the ALJ failed to explain important aspects of the credibility determination such as what testimony of Plaintiff was not considered credible. In addition, Plaintiff contends that the ALJ improperly discounted Plaintiff's credibility based upon the objective medical evidence and failed to even discuss Plaintiff's mental impairments. In opposition, Defendant contends that the ALJ properly addressed and discounted Plaintiff's credibility based upon well recognized reasons, such as

1  a review of the overall medical evidence and inconsistencies between Plaintiff's testimony
2  and the medical evidence.

3      In reviewing this issue, it is important to note that because the ALJ did not find
4  Plaintiff's mental impairments to be severe within the meaning of the Regulations, the ALJ
5  only addressed Plaintiff's physical limitations. The Court has found error with the ALJ's
6  determination regarding Plaintiff's mental impairments; however, it would be improper, at
7  this time, for the Court to find the ALJ's credibility analysis flawed because of the omission
8  of Plaintiff's mental impairments since the ALJ felt that the issue need not be addressed.
9  Thus, the Court will only address the Plaintiff's argument with respect to the ALJ's evaluation
10 as to Plaintiff's physical impairments and whether the ALJ complied with her obligation in
11 discounting Plaintiff's testimony regarding the severity of such.

12     "[O]nce the claimant produces objective medical evidence of an underlying
13 impairment, an adjudicator may not reject a claimant's subjective complaints based solely on
14 a lack of objective medical evidence to fully corroborate the alleged severity of pain. Bunnell
15 v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citing Cotton v. Bowen, 799 F.2d
16 1403, 1407 (9th Cir.1986)). "Unless, there is affirmative evidence showing that the claimant
17 is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be
18 'clear and convincing'" Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citing Lester
19 81 F.3d at 834. "[T]he ALJ must identify what testimony is not credible and what evidence
20 undermines the claimant's complaints." Lester, 81 F.3d at 834.

21     In reviewing the record on this issue, the Court finds that the ALJ did properly
22 discount Plaintiff's physical impairment testimony as the ALJ provided the requisite "clear
23 and convincing" reasons for doing so. For instance, in discounting the severity of Plaintiff's
24 severe back pain, the ALJ cited specific records suggesting that the impairment was not as
25 significant as suggested, such as the usefulness of physical therapy, and the routine and
26 conservative treatment. (Tr.27; 282; 291).  In addition, the ALJ noted that after Plaintiff's
27 knee surgery the Plaintiff reported that his pain was gone and that the record reveals no
28 evidence of treatment after May of 2004. (Tr.27;307).  Moreover, there is evidence in the

1 record suggesting that the Plaintiff's condition improved significantly after the use of
2 injections to address his reports of pain. (Tr. 27; 193).  The ALJ also evaluated the Plaintiff's
3 daily activities, such as yard and housework and exercise which reveal a fairly active
4 lifestyle. (Tr.28).  In sum, the Court finds that the ALJ did properly evaluate and discount the
5 Plaintiff's credibility with respect to the severity of his physical impairments as the ALJ
6 provided "clear and convincing" reasons based upon a thorough review of the record and
7 relevant factors helpful in evaluating credibility.  See Bunnell v. Sullivan, 947 F.2d 341, 346-
8 47 (9th Cir. 1991) (noting relevant factors to include the nature, duration, location, onset,
9 intensity of pain; functional restrictions and claimant's daily activities.); see also SSR 96-7p.
10 While Plaintiff clearly disagrees with the ALJ's determination, the Court finds that the ALJ's
11 determination is supported by the requisite "clear and convincing" reasons and therefore free
12 from a determination of error by this reviewing court.

### C.   **Future Handling**

14 As discussed above, the Court finds that the ALJ committed error at step two of the
15 sequential analysis in finding Plaintiff's mental impairments to be not severe within the
16 meaning of the Regulations.  However, contrary to Plaintiff's argument, the Court finds that
17 the appropriate remedy is to remand this case with instructions to the Secretary directing
18 further proceedings based upon the finding that Plaintiff's mental impairment is "severe"
19 within the meaning of the Regulations. In doing so, the Secretary will be required to
20 determine  whether Plaintiff's severe mental impairment, alone, or in combination with the
21 Plaintiff's other severe impairments support a finding of disability.  See INS v. Ventura, 537
22 U.S. 12, 16, 123 S.Ct. 353 (2002) ("except in rare circumstances ... remand to the agency for
23 additional investigation or explanation" is appropriate.); see also McAllister v. Sullivan, 888
24 F.2d 599, 603 (9th Cir. 1989) (stating remand is appropriate when Secretary is in better
25 position that court to evaluate the evidence.).

26 **Accordingly,**

27 **IT IS HEREBY ORDERED** granting in part and denying in part Plaintiff's Motion
28 for Summary Judgment (Dkt.#14).

**IT IS FURTHER ORDERED** granting in part and denying part Defendant's Motion for Summary Judgment. (Dkt.#20).

**IT IS FURTHER ORDERED** that this matter is remanded to the Commissioner for further proceedings to determine whether Plaintiff is disabled in light of the Court's ruling that Plaintiff's mental impairment is severe within the meaning of the Regulations.

DATED this 27th day of March, 2007.

_____
Mary H. Murguia
United States District Judge